UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD TOWNSEND,

       Plaintiff,

v.

       Case No. 4:14-CV-10411
       Judge Terrence G. Berg
       Magistrate Judge Anthony P. Patti

KAREN RHODES,
VICKI CARLSON,
LINDA HAASE,
MARCIA O'CONNELL and
JOHN DOES 1-4,

       Defendants.

_____/

## REPORT AND RECOMMENADTION REGARDING MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 28)

**I.   RECOMMENDATION**: The Court should grant the MDOC Defendants' Motion for Summary Judgment. DE 28.

**II.   REPORT:**

   **A.   Background**

This matter comes before the Court on the motion for summary judgment, exhibits and supporting affidavits (DE 28) filed by Defendants Vicki Carlson,

Linda Haase and Marcia O'Connell ("MDOC Defendants") and Plaintiff's response brief, exhibits and affidavit filed in opposition thereto (DE 33). Plaintiff Richard Townsend, a state prisoner who is proceeding without the assistance of counsel, filed his Complaint and Application to Proceed *In Forma Pauperis* on January 27, 2014. DEs 1, 2. Plaintiff brings deliberate indifference claims under the Eighth Amendment of the United States Constitution against Defendant MDOC nurses Karen Rhodes, Vicki Carlson, Linda Haase, and Marcia O'Connell.[1] He also named four "John Doe" Defendants, each of whom was dismissed without prejudice (DE 45) upon Plaintiff's request (DE 44). If the Court accepts this recommendation and grants summary judgment, Dr. Karen Rhodes will be the only remaining defendant.

All of Plaintiff's factual allegations against the MDOC Defendants are set forth in paragraph 22 of his complaint, the complete content of which reads as follows:

> On January 17, 2014, Dr. Rhodes had Plaintiff's pain medication
> (Naproxen) removed from his possession. Approximately 2:00 p.m.,
> Plaintiff informed unit Officer
> Bouldery he were [sic] having chest pains and shortness
> of breath. Officer Bouldery called healthcare, spoken [sic]
> RN, Vickie Carlson, and RN, Linda Haas. These registered

---

[1] Defendants Carlson, Haase, and O'Connell indicate in their motion that their names were misspelled in the Complaint (DE 28 at 6 n.1). They provide the correct the spelling of their names, which the Court will use throughout this Report and Recommendation, except where quoting directly from the complaint.

> nurses refused to provide Plaintiff medical treatment. Plaintiff discussed this matter with JCF Sergeant, who was making his scheduled evening rounds. Plaintiff explained, he was having chest pain and shortness of breath and health care refused him medical care. Sergeant called healthcare, spoken [sic] with Marsha O'Connor, [and] again plaintiff was refused medical care. (Incident logged in JCF E-Unit Log Book). In addition thereto, these registered nurses unauthorized released Plaintiff's medical information.[2]

DE 1 at 5-6.

In response to this single allegation, and in support of this dispositive motion, the MDOC Defendants have filed affidavits from all three nurses who have been accused (Carlson (DE 28-2), Haase (DE 28-3) and O'Connell (DE 28-

---

[2] While the last sentence of paragraph 22 broadly suggests a possible Health Insurance Portability and Accountability Act of 1996 (HIPAA) violation, Plaintiff pleads no particularized elements for such a claim, provides virtually no specific factual detail in that regard, identifies no particular records, does not specify to whom they were released (or when), seeks no discernible relief on that basis and does not plead a count for such a violation in conformity with Fed. R. Civ. P. 10(c). The Court is entitled to rely upon this in determining what claims are actually being made. Likewise, the Court and the defendants are entitled to rely upon this in determining what claims need to be defended or addressed. *See, United States v. School Dist. of Ferndale*, 400 F. Supp. 1122 (E.D. Mich. 1975) (claims seeking distinct remedies must be stated in separate counts to facilitate clear presentation of facts and issues). *See also, Nemitz v. Cunny*, 221 F. Supp. 571, 575 (N.D. Ill. 1963) ("different causes of action based on different legal theories, even though based on essentially identical facts, should be alleged in separate counts "); *Marlborough Holdings Group, Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F.App'x 899, 907 (11th Cir. 2013) (per curiam) (properly drafted pleadings will present each claim in a separate count; district court did not err by declining to consider conspiracy claim that was not properly pleaded as separate count, but was rather pleaded as part of the underlying substantive claim). There is, therefore, no consideration given to a possible HIPAA claim in this Report, as no such claim appears to have been made.

4)), the latter of which attempts to authenticate the log book record for the night in question (DE 28-4 at ¶4). Each of the defendant nurses, under oath, denies that they were called regarding Plaintiff's health on the night in question, denies speaking to correctional officers with respect thereto, and the denies refusing to provide Plaintiff with medical care. Instead, the log book entry (if authenticated) indicates that, "Health care notified about Townsend … Having chest pain and shortness of breath *per RN Hamblin* he is to kite as his condition is chronic." (DE 28-4 at 4) (emphasis added). Accordingly, the MDOC Defendants argue that: (1) "Plaintiff has the facts wrong," because the call was made to Nurse Hamblin, a non-party, not to any of the named defendants; and, therefore, (2) there is "no evidence to support Plaintiff's claim that Defendants Carlson, Haase and O'Connell were contacted about Plaintiff's condition"; and so they "cannot be deliberately indifferent [as] they were not aware of Plaintiff's condition." DE 28 at 6. Because of this, they ask the Court to grant summary judgment in their favor.

Plaintiff responds by noting that he is an insulin-dependent diabetic requiring insulin three times per day,[3] questioning the veracity of the log book entry (DE 28-4 at 4), which he contends should be revised to include calls to

---

[3] As stated in his response (DE 33 at 5) and as recently incorporated into his pleadings by way of this Court's Order (DE 49) Granting Plaintiff's Motion to Correct Mistake (DE 42).

Defendants Carlson and O'Connell (DE 33 at 15), and states in his own affidavit, in pertinent part, that:

> 11. On January 18, 2014, Plaintiff informed MDOC Officer Bouldery he was having chest pain and shortness of breath, [of] which he informed Defendant Carlson. Plaintiff was denied medical treatment/care.
>
> 12. Plaintiff informed MDOC Sergeant he was having chest pain and shortness of breath, [of] which he informed Defendant O'Connell of Plaintiff's medical condition.

DE 33 at 13-14.

Significantly, neither his response (DE 33 at 1-11) nor his affidavit (DE 33 at 12-15) makes any mention of Defendant Haase. Plaintiff also argues that the MDOC's *failure to deny* the involvement of these three nurses in its grievance responses constitutes evidence that they were in fact involved in his treatment or care and/or should (essentially) create some sort of estoppel. *See* DE 33 at 9, DE 33 at 14 ¶ 1438-42 (Ex. 10).

### B. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F.App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F.App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

    C.    **Discussion**

        1.    **The Adequacy (or Lack Thereof) of the Supporting Affidavits**

Federal Rule of Civil Procedure 56(c)(4) states that, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *None of the four affidavits submitted in support of or in response to this motion fully complies with the requirements of Rule 56.* The requirement of "personal knowledge" is not satisfied by a statement made "to the best of [the affiant's or declarant's] knowledge [and belief]," as is contained in Plaintiff's affidavit here (DE 33 at 12-15). *See, Shell Rocky Mountain Prod, LLC v. Ultra Res., Inc.,* 415 F.3d 1158, 1169 n.6 (10th Cir. 2005). Furthermore, "[C]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient." *Shakur v. Shapiro,* 514 F.3d 878, 890 (9th Cir. 2008) (internal quotations marks omitted). This requirement is important because non-expert witnesses may only testify about matters of which they have first-hand knowledge under Federal Rule of Evidence 602. "The witness's testimony must be based on events perceived by the witness through one of the five senses." 3 *Weinstein's Federal Evidence* 2d, ¶602.02[1].

The absence of a statement regarding "personal knowledge" in any of the affidavits here unnecessarily makes the Court's consideration of this motion more difficult.

All hope for curing the various affiants' failures to attest to their personal knowledge is not lost, however, if such personal knowledge can be "inferred from the content or context of the affidavit." 11 *Moore's Federal Practice* 3d, §56.94[2][b]. *See, White v. MPW Indus. Servs.,* 236 F.R.D. 363, 369 (E.D. Tenn. 2006) (court refused to strike paragraphs from declaration because court could reasonably infer that statements were based on personal knowledge, albeit perhaps hearsay). Where such inferences can be made by the court, they "must be grounded in observation or other firsthand personal experience." *Visser v. Packer Eng'g Assocs, Inc.,* 924 F.2d 655, 659 (7th Cir. 1991). On the other hand, even though personal knowledge can sometimes be inferred, [an] affidavit will not suffice where it fails to include the "basis from which to infer [that affiant] had personal knowledge." *American Family Mut. Ins. Co. v. Nat'l Fire & Marine Ins. Co.,* 2009 WL 2870202, at *5 n.3 (D. Ariz. Sept. 3, 2009).

Moreover, "An affidavit or declaration submitted to support or oppose summary judgment must be a sworn document or declared to be true under penalty of perjury. Courts will not ordinarily consider statements that do not meet one of these two standards." *Moore's, supra.,* at §56.94[2][a]. *See, e.g., Nissho-Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1305-1306 (5th Cir. 1988) (affidavit that was

"neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury" could not be considered as summary judgment proof). *See also, Demars v. O'Flynn,* 287 F. Supp.2d 230, 242-243 (W.D.N.Y. 2003). Plaintiff's affidavit, while claiming that he "swears," is not notarized, has no indication of an oath being given by anyone authorized to administer one or otherwise, and is not stated in the form of a declaration "under penalty of perjury." *See* DE 33 at 12-15.

In the present case, the Court must then determine whether the affidavits presented by either side can be considered in deciding this motion for summary judgment.

### a.     MDOC Affidavits

I believe that the three affidavits submitted by the MDOC Defendants may be properly considered in support of their motion because all three affidavits were sworn under oath before a notary, and while all three lack a specific statement that they are based upon "personal knowledge," they each provide sufficient facts from which personal knowledge may be inferred.  These three affidavits, which are substantially identical in content, are provided by individuals who were "at all times relevant to this lawsuit, employed by the Michigan Department of Corrections (MDOC) as…Registered Nurse[s] at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan."  DE 28-2, 28-3, 28-4, ¶1. Each

denies the allegations contained in paragraph 22 of the complaint, specifically the allegations of being spoken to by correctional officers regarding Plaintiff's medical treatment on the date in question and the allegations that they refused to provide Plaintiff with medical care. Since this is information that they would necessarily know through personal observation, *i.e.*, whether they did or did not speak to the correctional officers and whether they did or did not refuse medical care to the plaintiff, personal knowledge in this regard can be inferred.

However, each of the affidavits also purports to authenticate MDOC log book entries, which each of these defendants identifies as "records of regularly conducted activity" of the MDOC "made at or near the time of the occurrences reflected, by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters." *Id.* at ¶4. The nurses' affidavits are deficient in this regard, because none of them is identified as a record-keeper, or as being personally familiar with those particular records or as a person who made those records. In fact, they suggest the opposite inference, because they refer to the records being made "by a person with knowledge of matters, or from information transmitted by a person with knowledge of those matters," without identifying themselves as persons with such knowledge. This suggests that these three nurses are not responsible for these records, did not make them, may or may not be familiar with them, and may or may not be familiar with

the MDOC's practices with respect to these records. Thus, they provide no foundation for an exception to the hearsay rule under Fed. R. Evid. 803(6) and the records would not be admissible in evidence on these affidavits alone. *See, United States v. Mahar,* 801 F.2d 1477, 1492-1493 (6th Cir. 1986) (notes found in clinic had no proper foundation, because there was no evidence that notes were kept in the course of regularly conducted business activity of clinic's practices). Accordingly, while recognizing on its face that the log book entry page submitted by defendants in support of this motion (DE 28-4 at 4) appears to corroboratively support their position, it is not properly authenticated by these witnesses and should not be considered.

### b. Plaintiff's Affidavit

Plaintiff's affidavit (DE 33 at 12-15) should not be considered at all. It does not appear to be properly sworn, and does not contain the requisite language for a proper declaration, specifically omitting any acknowledgment that it is made under the penalty of perjury. Even if this defect could be overcome, it does not state that it is made on personal knowledge, and does not contain indicia from which such personal knowledge could be inferred. To the contrary, the context of the information contained in the affidavit suggests that the affiant *lacks* personal knowledge, because the events to which he attests occurred while he was incarcerated in a jail cell, as suggested by language in his complaint, in which he

notes that his conversation with JCF Sergeant occurred while the officer "was making his scheduled evening rounds." DE 1 at ¶ 22. This description is repeated in the statement of facts contained in his response brief (DE 33 at 5). His affidavit provides no additional context in which personal knowledge can be inferred or rejected.

In all three places, Plaintiff's explanation of what occurred is that he told two correctional officers that he was having chest pain and shortness of breath, and that the correctional officers in turn called one or more of the MDOC Defendants, the implication being that they each made telephone calls. Regardless of what types of "calls" were made, Plaintiff provides no basis to infer that he had personal knowledge that such calls were, in fact, made, since no facts are provided to indicate how he knows this, whether he observed the calls, where he and the officers respectively were when the calls were made, *etc*. *See, e.g., CarePartners, LLC v. Lashway,* 2010 WL 1141450, at *2n. 2 (W.D. Wash. Mar. 22, 2010) (in absence of indication that declarant was present during inspection or otherwise conferred directly with fire marshal, Plaintiff did not provide "any facts from which one could infer personal knowledge" of what fire Marshall said at inspection). Because there is no indication here as to how Plaintiff could have observed what he testified to, *i.e.*, no indication of how he used any of his five senses to perceive that these calls occurred, his affidavit is conclusory at best and

inadmissible due to lack of personal knowledge. *Coleman v. Blue Cross Blue Shield of Kansas,* 487 F. Supp.2d 1225, 1237 (D. Kan. 2007). *See also, United States v. Peoples,* 250 F.3d 630, 640- 641 (8th Cir. 2001) (federal agent's interpretation of recorded conversations inadmissible because lacking in personal perception or observation and therefore not based on personal knowledge). Even construing his affidavit in the most liberal light possible, bearing in mind the Court's inclination to do so in cases involving *pro se* litigants, this affidavit must be disregarded, since it is neither under oath, subject to the penalties of perjury, or made upon personal knowledge.

### 2. Summary Judgment Should be Granted as to Plaintiff's Eighth Amendment Claims

#### a. The Claims Against All of the MDOC Defendants Fail

Plaintiff brings his claims under the Eighth Amendment, asserting that Defendants have been deliberately indifferent to his medical needs. The MDOC Defendants argue that they are entitled to summary judgment, because Plaintiff cannot establish an Eighth Amendment Claim.

"The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer,* 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle v. Gamble,* 429 U.S. 97,

104–05 (1976)). The Court applies a two-prong test with objective and subjective components to assess claims of deliberate indifference to serious medical needs of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the plaintiff must show that the deprivation alleged is "objectively, 'sufficiently serious.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must show that the prison official committing the act did so with a "'sufficiently culpable state of mind.'" *Id.* (citing *Wilson*, 501 U.S. at 302-03). The United States Court of Appeals for the Sixth Circuit applies the test as follows:

> First, we determine whether the plaintiff had a sufficiently serious medical need under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong.

*Burgess*, 735 F. 3d at 476 (internal citations and quotations omitted).

To succeed on the subjective prong, a plaintiff must show "more than mere negligence, but something less than specific intent to harm or knowledge that harm will result. . . ." *Id.* (citing *Farmer*, 511 U.S. at 835). Specifically, the conduct must "demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). However, "a prisoner is not required to show that he [or she] was literally ignored by the staff to prove an Eighth Amendment violation, only that his [or her] serious medical needs were

consciously disregarded." *Rouster v. Cnty. of Saginaw*, 749 F. 3d 437, 448 (6th Cir. 2014). Put another way:

> [a] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm.

*LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

As previously acknowledged in the instant case by this Court, this motion "hinges on the question of 'Whodunnit?' In fact, Defendants' summary judgment motion is based entirely on their affidavits, which in essence state that Plaintiff has sued the wrong people, because none of these three nurses allegedly had anything to do with the medical treatment at issue in this case." DE 51 at 2, citing DE 28 at 6. As discussed above, Defendants Carlson, Haase and O'Connell have each come forward with sworn affidavits denying the factual allegations made against them in paragraph 22 of the complaint, which are in fact the only factual allegations made against them and which are the only factual allegations accusing them of failure to provide medical care. Plaintiff has not provided a valid affidavit or declaration in response, or given any indication that he has personal knowledge or other admissible evidence to the contrary. Thus, the MDOC Defendants' testimonial denial of the key factual allegations upon which the entire Eighth Amendment claim rests is unrebutted.

As Defendants correctly point out, "An Eighth Amendment claim has an objective component and a subjective component." *Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (citing [Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001)](#)). This is so because the Eighth Amendment "does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). It is the state of mind element in a conditions-of-confinement case which constitutes the "deliberate indifference." *Farmer,* 511 U.S. at 834. Therefore, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official *knows of and disregards* an excessive risk to inmate health or safety." *Id.* at 837 (emphasis added). An "'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference.'" *Weaver v. Shadoan,* 340 F.3d 398, 410 (6th Cir. 2003) (quoting *Farmer*, 511 U.S. at 837). The defendants note that, "Plaintiff has the facts wrong." DE 28 at 6; and through their affidavits, have provided undisputed evidence that they could not have been deliberately indifferent to this plaintiff, since they were not aware of his condition and not involved in the incident upon which his entire claim against them hinges.[4] Therefore, they could

---

[4] Although I am not considering the log entries to which *both sides* point as evidence of their competing versions of the events which occurred on January 17, 2014, they do, on their face, suggest that this is a case of mistaken identity, as they

not have drawn an inference "that a substantial risk of harm" to Plaintiff existed on the date in question and his Eighth Amendment claim must fail. Summary judgment should accordingly be granted in favor of the MDOC Defendants.[5]

### b. Alternatively, Even if the Court Were to Give Favorable Consideration to Plaintiff's Affidavit, Summary Judgment Should be Granted in Favor of Defendant Haas

Even if the Court were to consider Plaintiff's deficient affidavit in deciding this motion – inferring personal knowledge of the calls made by the correctional officers to the nurses and their awareness that he was at substantial risk of harm – Defendant Haas would have to be dismissed, as the affidavit makes no mention of

---

identify the health care worker called by the correction officers as Nurse Hamblin. If properly authenticated and accepted as evidence, the log notes would tend to corroborate Defendants' version of these events.

[5] Plaintiff argues that the MDOC Defendants' response to his administrative grievances failed to deny his identification of the nurses who were involved in the January 17, 2014 events, and that this lack of a denial in the grievance process should somehow count as an admission that he has correctly identified them. Leaving aside the fact that statements made in prisoner grievance proceedings have no preclusive effect, *see Campbell v. Arkansas Dept. of Correction*, 155 F.3d 950, 960 (8th Cir. 1998) ("[Plaintiff]'s grievance hearing was not sufficiently like a judicial proceeding for [Defendant's] statement about the evidence to be given preclusive effect in this case."), his reading of these grievance responses, which he attaches to his motion response as Exhibit 10 (DE 33 at 38-42) is inaccurate. The MDOC's response never admits to Plaintiff's rendition of who was involved, but simply states that "there is documentation in the log book that Health Care was contacted and *the RN* said to 'Kite' health care…." DE 33 at 40, 42 (emphasis added). The log book entry to which the MDOC refers (DE 28-4 at 4) clearly identifies the "RN" as Nurse Hamblin; so an inference against Defendants Carlson, Haase and O'Connell, based on the grievance responses, is unwarranted.

her.  Likewise, Plaintiff's response to this motion, while specifically mentioning Defendants Carlson and O'Connell, says nothing about Nurse Haas.  Thus, the only place in which she is mentioned is paragraph 22 of the unverified complaint,[6] while Haas's own sworn affidavit (DE 28-3), denying any involvement in the medical care and events of the night in question, is unrebutted.  Her lack of involvement is, therefore, an undisputed fact, which is dispositive of this motion in her favor.  Fed. R. Civ. P. 56(c)(1) ("Supporting Factual Positions."), Fed. R. Civ. P. 56(e) ("Failing to Properly Support or Address a Fact.")

   **3.  The Court Need Not Reach the Issue of Qualified Immunity**

"When a state or federal official asserts qualified immunity, he claims that his actions were reasonable in light of clearly established law." *Nevada v. Hicks*, 533 U.S. 353, 400 (2001) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).  As can be seen from the MDOC Defendants' motion, their qualified immunity argument does not argue the *reasonableness* of their actions.  Their statement that "there is no evidence to support Plaintiff's claim that Defendants Carlson, Haase, and O'Connell were aware that he was having chest pain and shortness of breath[,]" DE 28 at 14-15, really argues that Plaintiff has not shown a constitutional violation.

---

[6] Although titled "Verified Complaint and Jury Demand," Plaintiff's complaint is not signed under penalty of perjury.  *See* DE 1 at 7, 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").

Since Plaintiff is unable to overcome the undisputed fact that the MDOC Defendants were not involved in the incidents alleged against them, and therefore cannot be held liable for a violation of his Eighth Amendment rights, the Court need not go on to consider whether the MDOC Defendants' actions were reasonable in light of clearly established law. In other words, the MDOC Defendants should be dismissed because the undisputed answer to the question of "Who dunnit?" is "Not us." It is unnecessary to conduct a further analysis as to whether these defendants are entitled to qualified immunity for their actions or inactions if they were not involved at all.

### 4. Conclusion

Giving the appropriate consideration to Plaintiff's affidavit and the affidavits of the MDOC Defendants, the Court should conclude that the claims against the MDOC Defendants fail. Accordingly, the Court should grant the MDOC Defendants' motion for summary judgment (DE 28).

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 9, 2015                         s/Anthony P. Patti
                                            U.S. MAGISTRATE JUDGE