UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD TOWNSEND,

          Plaintiff,

    v.                             Case No. 14-10411
                                     HON. TERRENCE G. BERG
KAREN RHODES, et al.             HON. ANTHONY P. PATTI

          Defendants.

_____/

# OPINION AND ORDER MODIFYING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. 53) AND GRANTING MOTION FOR SUMMARY JUDGMENT (DKT. 28)

Pro se Plaintiff Richard Townsend, a state prisoner currently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, filed this civil rights action under 42 U.S.C. § 1983 against Defendant Karen Rhodes, a doctor, and Defendants Vickie Carlson, Linda Haase, and Marsha O'Connell ("Defendant Nurses")[1], all nurses employed by the Michigan Department of Corrections ("MDOC"). In his January 27, 2014 complaint, Plaintiff alleges that, while he was incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. (*See* dkt. 1.) Defendants Carlson, Haase, and O'Connell filed a motion for summary judgment on November

_____

[1] Defendants Carlson, Haase, and O'Connell indicate in their motion that their names were misspelled in the complaint. (Dkt. 28, p. 6 n.1). They provide the correct spelling of their names, which the Court will use throughout this opinion and order, except where quoting directly from the complaint.

27, 2014. (Dkt. 28.) Defendant Rhodes also filed a motion for summary judgment on July 28, 2015 (Dkt. 59), but that motion is not the subject of this Order.

On January 30, 2014, the Court referred this matter to Magistrate Judge Paul J. Komives. (Dkt. 5.) This case was then reassigned to Magistrate Judge Anthony P. Patti on January 13, 2015. (Text-only order, January 13, 2015.) Before the Court is Judge Patti's June 9, 2015 Report and Recommendation (Dkt. 53) recommending that the Court grant the November 27, 2014 motion for summary judgment filed by Defendants Carlson, Haase, and O'Connell (Dkt. 28).

Specifically, the Report and Recommendation recommends granting summary judgment in favor of Defendant Nurses because Plaintiff's affidavit must be completely disregarded "since it is neither under oath, subject to the penalties of perjury, or made upon personal knowledge." (Dkt. 53, p. 13.) As a result, Defendant Nurses' version of events is unrebutted and Plaintiff's claim against them fails because there is no genuine issue of material fact for a jury to resolve. (*Id.* at 15-17.) Because there is no genuine issue of material fact, the Magistrate Judge did not reach Defendant Nurses' argument that they are entitled to qualified immunity. (*Id.* at 18-19.)

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the Report and Recommendation. 28 U.S.C. § 636(b)(1), E.D. Mich. LR 72.1(d). A district court must conduct a de novo review of the parts of a Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

On July 6, 2015, Plaintiff's objections to the Report and Recommendation were filed on the Court's docket. (Dkt. 55.) These objections were dated June 30, 2015.[2] (*Id.* at 18.) With his objections, Plaintiff filed: (1) a second affidavit[3] purporting to cure the defects the Magistrate Judge found in the original(Dkt. 56); and (2) a request that Defendants Carlson, Haase, and O'Connell produce certain discovery related to Plaintiff's claim against them[4] (Dkt. 55, pp. 19-22).

In his objections, Plaintiff maintains that the Magistrate Judge erred: (1) by disregarding Plaintiff's affidavit (*Id.* at 1-4); (2) by not providing Plaintiff with a meaningful opportunity to obtain discovery prior to issuing the Report and

---

[2] Although Plaintiff's objections were untimely, the Court will nonetheless consider them "in the interests of justice." *See Thomas v. Arn*, 474 U.S. 140, 155 (1985).

[3] Because this affidavit was filed with Plaintiff's objections, it was not presented to the Magistrate Judge for consideration when making his recommendation to grant Defendant Nurses' motion for summary judgment. Defendant Nurses have not moved to strike this second affidavit. In light of the Sixth Circuit's ruling in *Muhammad v. Close*, a § 1983 case filed by a Michigan state prisoner in which the Court of Appeals remanded the case to the District Court in part for consideration of an affidavit filed with the Plaintiff's objections to a Report and Recommendation recommending granting summary judgment in favor of the Defendant corrections officer, the Court will consider Plaintiff's second affidavit in the above-captioned case. 379 F.3d 413, 417-18 (6th Cir. 2004).

[4] Among his many requests, Plaintiff asks for the opportunity to inspect, review, and copy his medical records at his own expense. (Dkt. 55, p. 21.) The Court notes that, on July 28, 2015, Defendant Rhodes filed 823 pages of Plaintiff's medical records under seal as an exhibit to her motion for summary judgment. (Dkt. 61.) The records span Plaintiff's treatment from 2011 through early 2014. (*See id.*) Plaintiff was served with a paper copy. (*See* dkt. 60, p. 6.) The Court acknowledges that MDOC has an established policy and procedure, in conformance with the Medical Records Access Act, MCL § 333.26261, for prisoners to request their medical records. *See* MDOC Policy Directive ("PD") 03.04.108 ¶¶ T-V, *available at* http://www.michigan.gov/documents/corrections/PD_03_04_108_500056_7.pdf; *see also* MDOC Operating Procedures 03.04.108-B "Prisoner Access to Medical Records."

3

Recommendation (*Id*. at 4-9); and (3) by finding that Plaintiff's claim failed against Defendant Nurses (*Id*. at 9-17).

The Court has carefully reviewed the Magistrate Judge's Report and Recommendation and thoroughly considered Plaintiff's objections. For the reasons set forth below, Plaintiff's objections are **OVERRULED**. Because the Court has considered evidence not available to the Magistrate Judge but will concur in the result albeit on different grounds, the Report and Recommendation (Dkt. 53) is **MODIFIED** and **ADOPTED** as the opinion of the Court.[5]

## I. FACTUAL BACKGROUND

At issue in Defendant Nurses' motion for summary judgment is Plaintiff's claim of deliberate indifference against them. In paragraph 22 of his complaint, Plaintiff presents his single allegation against Defendant Nurses:

> On January 17, 2014, Dr. Rhodes had Plaintiff's pain medication (Naproxen) removed from his possession. [At] [a]pproximately 2:00 p.m., Plaintiff informed unit Officer Bouldery he were [sic] having chest pains and shortness of breath. Officer Bouldery called healthcare, spoken [sic] RN, Vickie Carlson, and RN, Linda Haas. These registered Nurses refused to provide Plaintiff medical treatment. Plaintiff discussed this matter with JCF Sergeant, who was making his scheduled evening rounds. Plaintiff explained, he was having chest pain and shortness of breath and health care refused him medical care. Sergeant called healthcare, spoken [sic] with Marsha O'Connell, [and] again plaintiff was refused medical care. (Incident logged in JCF E-Unit Log Book).

---

[5] Related to Defendant Nurses' motion for summary judgment (Dkt. 53) is Defendant Nurses' May 7, 2015 motion to stay discovery (Dkt. 48). In their motion to stay discovery, Defendant Nurses argued that all discovery related to Plaintiff's claim against them should be stayed pending the resolution of their motion for summary judgment. (Dkt. 48, pp. 8-11.) Plaintiff responded on May 26, 2015. (Dkt. 50.) On May 29, 2015, the Magistrate Judge denied Defendant Nurses' motion in part, allowing discovery to proceed with regard to Plaintiff's attempt to secure a copy of his medical records and a copy of a portion of the prison log book. (Dkt. 51, pp. 3-4.) Defendant Nurses objected to the Order on June 5, 2015. (Dkt. 52.) Because the Court will adopt the June 9, 2015 Report and Recommendation recommending that summary judgment be granted in favor of Defendant Nurses, their objection to the Order denying their request to stay discovery will be overruled as moot.

In addition thereto, these registered nurses unauthorized released Plaintiff's medical information.[6]

Plaintiff states that he subsequently filed Step I, II, and III grievances in response to this alleged incident.[7] (Dkt. 33, Ex. 10, pp. 38-42.) Prior to filing his Step I grievance, Plaintiff states that he spoke with Defendants Carlson and O'Connell regarding the alleged incident and neither nurse "denied having knowledge of Plaintiff's chest pain and shortness of breath on January 17, 2014." (Dkt. 56, ¶ 7.) In his response brief, Plaintiff filed MDOC's responses made during the grievance investigation. (*Id.,* at 40-42.)

The Step I investigation found that according to the "Unit officer," there was "documentation in the log book that health care was contacted and the RN said to 'kite' health care unless the chest pain was different from the previous chest pain." (*Id.* at 42.) The Step II investigation concluded that the grievance had been resolved at Step I as there had been no further complaint of chest pain and instructed Plaintiff to "access health care through the kite process." (*Id.*) Plaintiff did not

---

[6] As the Magistrate Judge explains in his Report and Recommendation, the final sentence of paragraph 22 seems to suggest a possible Health Insurance Portability and Accountability Act of 1996 ("HIPAA") violation (Dkt. 53, p. 5, fn. 2), but Plaintiff provides no further factual detail or any evidence of such a claim. The Court therefore agrees with the Magistrate Judge that Plaintiff has not made a HIPAA claim and no consideration with be given to such a claim in this Order.

[7] MDOC, via Policy Directive 03.02.130, requires prisoners to complete a grievance process to exhaust their administrative remedies. MDOC Policy Directive ("PD") 03.02.130 ¶ B, *available at* http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf. Briefly, prisoners not satisfied with a response to their Step I grievance, or who have not received a timely Step I response, may file a Step II grievance. PD 03.02.130 ¶ BB. Similarly, "[a] grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response" PD 03.02.130 ¶ FF. "The Grievance and Appeals Section shall be the respondent for Step III grievances on behalf of the Director. Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system" (*Id.*) Plaintiff has provided documentation of responses to a Step I and a Step II, but not a Step III, grievance.

attend the interview scheduled as part of the grievance investigation. (*See id.* at 40.) Plaintiff did not provide any documentation of a Step III grievance investigation or response.

 Defendant Nurses argue in their motion for summary judgment that this is a case of mistaken identity. Each Defendant Nurse denies: (1) being called on the date in question regarding Plaintiff; (2) speaking to a corrections officer about Plaintiff's health; and (3) refusing Plaintiff medical care. (*See* dkt. 28, Exs. 1-3.) Defendant Nurses also provide a copy of the log book page Plaintiff references in his complaint.[8] (Dkt. 28, Ex. 3, p. 4.) The page, dated January 17, 2014, contains the following entry made at 2:10 pm:

> Health care notified about Townsend 181420 E28 having chest pain and shortness of breath per RN Hamblin he is to kite as his condition is chronic

---

[8] The Court will consider this document although the Magistrate Judge did not. While both parties discuss this log book page in their briefs, the Magistrate Judge concluded that this evidence could not be considered in deciding Defendant Nurses' motion for summary judgment because it was not properly authenticated by the moving parties as a business record. (Dkt. 53, pp. 10-11.) Prior to adoption of the current Rule 56 in 2010, the Sixth Circuit had consistently held that that "documents presented in connection with a summary judgment motion must be authenticated." *Foreword Magazine, Inc. v. OverDrive, Inc.,* No. 1:10-1144, 2011 WL 5169384, at *1 (W.D. Mich. Oct. 31, 2011); *see also Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir. 2009) (noting "this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)"). However, courts in this and other Circuits have found that, in light of the 2010 changes to Rule 56, authentication is no longer required. *See Hill v. Walker,* No. 13-CV-13097, 2015 WL 5211919, at *11 (E.D. Mich. Aug. 31, 2015) (collecting cases). As the Honorable Thomas L. Ludington observes in *Hill,* this change reflects the Advisory Committee notes, "which indicate that the amendments were intended to remove this requirement and allow courts to examine any admissible materials in the record: the authentication clause was 'omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.'" 2015 WL 5211919 at * 11 (quoting Fed. R. Civ. P. 56, 2010 advisory committee's note). Moreover, "[e]ven under the prior regime, courts would not always disregard unauthenticated materials. If the opposing side did not object to such documents, courts frequently considered them, and still do after the amendments." *Pawlaczyk v. Besser Credit Union,* No. 1:14-10983, 2015 WL 4208649, at *8 (E.D. Mich. Apr. 13, 2015) (collecting cases), *Report & Recommendation adopted by* No. 14-10983, 2015 WL 4208658 (E.D. Mich. July 10, 2015). Here, Defendant Nurses support their motion in part with an unauthenticated copy of a prison log book page that Plaintiff alternatively relies on and questions as inaccurate. (*See, e.g.,* dkt. 33, p. 15; dkt. 55.)

6

(*Id.*) There are no other entries on the page related to Plaintiff or Plaintiff's health and the entries continue through 9:45 pm. (*See id.*)

Plaintiff requested and was granted an extension of time to file a response to Defendant Nurses' motion for summary judgment (Dkts. 30-31), and his response was docketed on February 6, 2015 (Dkt. 33.) In his response, Plaintiff questions the accuracy of the log book page and maintains that both Defendants Carlson and O'Connell were called regarding Plaintiff's health condition on the day in question and that both refused Plaintiff medical treatment. (Dkt. 33, pp. 14-15.)

Plaintiff's first affidavit, provided with his response brief, is not notarized but is signed by Plaintiff who "swears that the above statements are true, correct, and to the best of his knowledge and belief." (*Id.* at 15.) In addition to this affidavit, Plaintiff includes some general information from the Mayo Clinic website on diabetes, diabetic ketoacidosis, and having an enlarged heart, records from the Step I and II grievance investigations, and some x-ray and MRI results and consultation notes from three medical visits in February, April, and May 2014. (*Id.* at 17-50.)

Plaintiff made no subsequent complaint regarding chest pain or shortness of breath. The medical visits Plaintiff documents in his response were all regarding pain in Plaintiff's left shoulder. (*See id.*) Plaintiff's February 25, 2014 x-ray of his left shoulder and left humerus were unremarkable. (*Id.* at 44.) On April 25, 2014, Dr. James Heisel examined an MRI of Plaintiff's left shoulder and found evidence of mild degenerative arthritis and tendonitis. (*See id.* at 45-46.) Dr. Khawaja H. Ikram, who examined Plaintiff's left shoulder on May 28, 2014, noted that Plaintiff

denied "any recent injuries, fall or trauma" and "can remember no recent injury or history that brought [the discomfort] on." (*Id.* at 47.)

The Magistrate Judge filed his Report and Recommendation recommending that summary judgment be granted in favor of Defendant Nurses on June 9, 2015. (Dkt. 53.) Plaintiff's objections to the Report and Recommendation (Dkt. 55), in addition to his second affidavit purporting to cure the defects found in the first (Dkt. 56), were docketed on July 6, 2015. Defendant Nurses did not respond to Plaintiff's objections or move to strike Plaintiff's second affidavit.

## II.    ANALYSIS

Before the Court is the Magistrate Judge's Report and Recommendation (Dkt. 53) and Plaintiff's objections (Dkt. 55). Because the Magistrate Judge found that Plaintiff's affidavit must be disregarded and, even if Plaintiff's affidavit were to be considered, there is no evidence whatsoever that Defendant Haase was involved in the alleged incident, the Magistrate Judge recommended granting summary judgment in favor of Defendant Nurses. (Dkt. 53, pp. 13-17.)

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light

most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001). "It is well established that statements appearing in a party's brief are not evidence." *Duha v. Agrium, Inc.,* 448 F.3d 867, 879 (6th Cir. 2006).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

The Court may but is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

There is no genuine dispute, however, if one party's version of the facts is blatantly contradicted by objective evidence in the record. *See Scott v. Harris*, 550

U.S. 372, 378-81 (2007) (where a party's version of the facts is blatantly contradicted by the record so that no reasonable jury could believe it, the Court should not adopt that version when ruling on a motion for summary judgment); *see also Coble v. City of White House, Tenn.*, 634 F.3d 865, 868-69 (6th Cir. 2011) (extending the *Scott* analysis to an audio recording because "[t]he *Scott* opinion does not focus on the characteristics of a videotape, but on 'the record'"); *Khother v. DeEulis*, 527 F. App'x 461, 462-63 (6th Cir. 2013) (adopting the facts as presented in a videotape that blatantly contradicted a Plaintiff's claim that his head was slammed into the booking desk); *Booher ex rel. T.W. v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (disregarding eyewitness testimony that an officer twisted a juvenile's wrist as insufficient to create a genuine issue of material fact because it was blatantly contradicted by medical evidence).

Plaintiff has filed three objections in response to the Report and Recommendation, arguing that the Magistrate Judge erred: (1) by disregarding Plaintiff's affidavit; (2) by not providing Plaintiff with a meaningful opportunity to obtain discovery prior to issuing the Report and Recommendation; and (3) by finding that Plaintiff's claims failed against Defendant Nurses. (Dkt. 55, pp. 1-17.) With respect to Defendant Haase, Plaintiff states that he "cannot present a meaningful defense without first obtaining discovery" and requests that his claim against Defendant Haase be preserved "til such time discovery is obtained." (*Id.* at 17.) Plaintiff also filed with his objections a second affidavit notarized on June 30, 2015. (Dkt. 56.) The Court will now address each of Plaintiff's objections.

**B. The Magistrate Judge Properly Disregarded Plaintiff's Affidavit.**

Plaintiff argues that the Magistrate Judge erroneously determined that while Defendant Nurses' affidavits could be considered in deciding the Motion for Summary Judgment, Plaintiff's affidavit could not. Pursuant to Federal Rule of Civil Procedure 56(c)(4), Plaintiff's affidavit was not considered because it was not properly sworn, lacked the requisite language for a proper declaration, did not state that it was made on personal knowledge, and did not contain sufficient information from which such knowledge could be inferred. (Dkt. 53, pp. 11-12.) Because Plaintiff's affidavit could not be considered, Defendant Nurses' declarations that they were not aware of Plaintiff's condition and could therefore not be deliberately indifferent to it were unrebutted and no genuine issue of material fact existed.

According to Plaintiff, the Court is obligated to accept any "direct evidence" he proffers in response to the motion for summary judgment as true and that as a pro se litigant, he must be held to a less stringent standard than an attorney. (Dkt. 55, pp. 2-3.) Moreover, Plaintiff attempts to supplement the information alleged in his original affidavit by stating in his brief and second affidavit that Plaintiff was standing at the "officer desk" when both calls were made to health services. (*Id.* at 2.) Plaintiff states that while standing at the desk, he was informed by the officers who made the calls that they had spoken with Defendants Carlson and O'Connell respectively and that both nurses had independently refused Plaintiff medical care for his chest pain and shortness of breath. (*Id.*) Therefore, Plaintiff reasons, the Court now has sufficient information to infer personal knowledge on the part of

Plaintiff of the events he alleges took place. (*Id.*) Plaintiff includes this information in his second affidavit, which, unlike his first, is notarized.[9] (Dkt. 56, ¶ 6.)

The Magistrate Judge properly disregarded Plaintiff's first affidavit. Plaintiff correctly states that when deciding a motion for summary judgment, the Court must accept any direct evidence offered by Plaintiff in response to the motion as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). Moreover, in opposing a motion for summary judgment, the nonmoving party need not submit evidence *in a form* that is admissible at trial. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Sixth Circuit has held, however, that "[although] parties may resist a summary judgment motion by presenting evidence not in an admissible form, such as an affidavit, the evidence itself must still be admissible." *N. Am. Specialty Ins. Co v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). The focus is thus on the admissibility of the content of the evidence, not its form, and inadmissible evidence, such as hearsay evidence, cannot create a genuine issue of material fact. *Id.*; *Wiley v. U.S.*, 20 F.3d 222, 225–26 (6th Cir. 1994).

---

[9] In this objection, Plaintiff also renews his argument that because Defendant Nurses did not explicitly deny during the Step I and II grievance investigation that they were unaware of Plaintiff's health-related complaints, they have admitted such awareness on their part. (*Id.* at 3-4.) The Court agrees with the Magistrate Judge's analysis of this issue, however. As the Magistrate Judge explains, any inference against Defendant Nurses based on these grievance responses is unwarranted because the responses do not admit to or even mention their involvement. (Dkt. 53, p. 17, fn. 5.) A failure to deny does not constitute an admission in this context, nor can the Court infer from these responses that Defendant nurses had knowledge of Plaintiff's health complaints on the day in question.

Consequently, an affidavit defeats summary judgment only if it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Federal Rule of Civil Procedure 56(c)(4) thus "limits the matter to be properly included in an affidavit to facts, and the facts introduced must be alleged on personal knowledge…statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (quoting 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2738, at 345–46, 350–54 (3d ed. 1998)).

Plaintiff makes two relevant statements in both of his affidavits. He asserts (1) that two corrections officers told Plaintiff that they spoke with Defendants Carlson and O'Connell regarding Plaintiff's chest pain and shortness of breath and (2) that, according to the officers, both Defendants independently refused to treat Plaintiff. Plaintiff's averment that he observed the officers convey his medical complaints is more in the nature of information based on personal knowledge. His recollection of what the officers told him about what Nurses Carlson and O'Connell told the officers in more in the nature of a belief. This distinction is bolstered by the fact that Plaintiff's belief about this conversation between the officers and the nurses is contradicted by the contemporaneous log, which did not record any contact with Carlson or O'Connell. Belief, no matter how sincere, is not equivalent to knowledge.

13

Moreover, the statements attributed to the corrections officers in Plaintiff's affidavit contain inadmissible double hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Plaintiff asserts that two corrections officers told him (hearsay) that Defendants Carlson and O'Connell told the officers (double hearsay) that they would not treat Plaintiff. Defendant Nurses have sworn that they did not refuse to treat Plaintiff. Plaintiff has failed to present any further evidence and there is nothing in the record that supports Plaintiff's position that these corrections officers would testify in accordance with Plaintiff's assertions. Plaintiff's statement that Defendants Carlson and O'Connell were aware of Plaintiff's condition but refused to treat him is based on inadmissible hearsay evidence that cannot be considered on a motion for summary judgment. *Wiley*, 20 F.3d at 226.

In his first affidavit, Plaintiff states that he informed two different corrections officers that he was having chest pain and shortness of breath and that those officers in turn told him that they called Defendants Carlson and O'Connell respectively and informed them of Plaintiff's health problem but neither Defendant agreed to provide care.[10] (Dkt. 33, pp. 13-14, ¶¶ 11-12.)

---

[10] The relevant paragraphs in Plaintiff's *first* affidavit read as follows:

    11. On January 18, 2014, Plaintiff informed MDOC Officer Bouldery he was having chest pain and shortness of breath, which he informed Defendant Carlson. Plaintiff was denied medical treatment/care. Plaintiff filled out a Health Care Request Form (HCRF) starting he was having chest pain and shortness of breath

14

Plaintiff's second affidavit is substantially similar.[11] Plaintiff asserts that "[w]hile standing at the officer's desk," a corrections officer "informed Defendant Vickie Carlson of plaintiff's medical condition" and Defendant Carlson denied Plaintiff treatment. (Dkt. 56, ¶ 6.) Plaintiff then informed a sergeant of his health problems and the sergeant "called health care regarding plaintiff's medical condition" but Plaintiff was again denied care.[12] (*Id.*) The sergeant informed Plaintiff that the sergeant had spoken to Defendant O'Connell. (*Id.*)

Plaintiff argues that because he has clarified that he was standing "at the officer's desk" when Officer Bouldery "informed Defendant Vickie Carlson of plaintiff's

---

12. Plaintiff informed MDOC Sergeant he was having chest pain and shortness of breath, which he informed Defendant O'Connell of Plaintiff's medical condition. Plaintiff was denied medical treatment/care.

(Dkt. 33, pp. 13-14, ¶¶ 11-12.)

[11] Plaintiff's *second* affidavit is notarized and states that Plaintiff has been "duly sworn," but does not contain any indication whether the statements were made based on personal knowledge, information, or belief. (*See* dkt. 56.)

[12] Paragraph 6 of Plaintiff's second affidavit contains the statements relevant to this motion:

(6) On January 17, 2014, approximately 14:10, Plaintiff informed Officer Bouldery, "he was having chest pain, shortness of breath." While standing at the officer's desk, officer Bouldery informed Defendant Vickie Carlson of plaintiff's medical condition. Defendant denied Plaintiff medical treatment. Surprised by defendant's response, Officer Bouldery informed plaintiff, Defendant Vickie Carlson was medical staff he spoke with for the purpose of filing Step I Grievance. Due to the seriousness of Plaintiff's complaint, Officer Bouldery advised Plaintiff to speak to Sergeant regarding the denial of medical treatment. The Sergeant arrived in E-unit at approximately 14:28. Plaintiff informed Sergeant, he were having chest pain, shortness of breath and health care denied him medical treatment? Sergeant called health care regarding plaintiff's medical condition. Again, medical staff denied plaintiff medical treatment. Surprised by medical staff response, Sergeant informed Plaintiff, Defendant Marcia O'Connell was the person he spoke with for the purpose of filing Step I Grievance.

(Dkt. 56.) In paragraph 7, Plaintiff states that he spoke with Defendants Carlson and O'Connell before he filed his Step I Grievance "as required by Michigan Department of Corrections Policy Directive (DP) and Operating Procedure (OP)" and that neither Defendant "denied having knowledge of Plaintiff's chest pain and shortness of breath January 17, 2014." (*Id.* at ¶ 7.)

medical condition," the Court can now infer that Plaintiff has personal knowledge of the facts necessary to create a genuine issue of material fact as to Defendant Nurses' awareness of and refusal to treat his medical condition. (Dkt. 55, p. 2.)

Being present at the officer's desk, however, is not sufficient to create an inference of personal knowledge of the content of the conversations between the officers and the Defendant Nurses. Plaintiff did not speak to Defendant Nurses himself, does not state whether he actually witnessed the corrections officers make the alleged phone calls, and offers no corroborating evidence confirming that any of the Defendant Nurses were called on the day in question. These are the same concerns raised by the Magistrate Judge regarding Plaintiff's first affidavit. (Dkt. 53, pp. 12-13.)

Moreover, the records Plaintiff submitted from the Step I and II grievance investigations do not identify Defendants Carlson and O'Connell as those nurses allegedly called on January 17, 2014. (*See* dkt. 33, pp. 40-42.) The grievance response references only one unnamed nurse, stating that the unit officer was contacted as part of the investigation and "according to him there is documentation in the log book that health care was contacted and *the RN* said to 'kite' health care unless the chest pain was different from the previous chest pain." (*Id.* at 40 (emphasis added).) Finally, the log book entry appears on its face to blatantly contradict Plaintiff's statements regarding which nurses were contacted on the day in question and refused him treatment. The lone log book entry referencing Plaintiff identifies a Nurse Hamblin, who is not a named Defendant in this case, as the only

16

nurse contacted regarding Plaintiff's health on January 17, 2014. (Dkt. 28, Ex. 3, p. 4.)

In *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015), this Circuit held that:

> …when affidavits based on knowledge and belief are submitted to support or oppose a motion for summary judgment, the district court has discretion to determine whether it can differentiate between knowledge and belief for each averment in the affidavit. If the court can distinguish between the two, then, as was the case in *Upshaw,* the court should excuse the affiant's stylistic error, and must admit the parts based solely upon personal knowledge, while striking the parts based upon belief. If the court cannot differentiate between the two, then consistent with the rationale in Wright & Miller, the court must strike the affidavit in its entirety, as in *Totman*. We review for abuse of discretion the district court's decision on whether it could distinguish between knowledge and belief for each of the affidavit's averments, and thus whether to strike in part or to strike *in toto*.

The Court in *Ondo* further held that the District Court did not abuse its discretion in disregarding Plaintiffs' affidavits in their entirety because the District Court could not distinguish between knowledge and belief in those affidavits. *Id.* Moreover, the Court noted that there were "clear factual discrepancies" between the affidavits and the admitted evidence and that some of Plaintiffs' assertions were contradicted by objective evidence or otherwise "demonstrably false." *Id.* In this case, even if the Court were to strike only those statements for which it could not ascertain that there was a personal knowledge basis for the facts they contained, the remaining statements would not create any genuine issue of material fact relevant to this motion.

Plaintiff makes two relevant assertions in his affidavit: (1) Defendants Carlson and O'Connell were made aware of Plaintiff's health concerns; and (2) Defendants refused to treat Plaintiff. The only source of these assertions is Plaintiff's belief as to what the correctional officers allegedly said to him about what the nurses allegedly said to the officers. The second affidavit, like the first, does not establish that Plaintiff had personal knowledge of the relevant statements. Because these statements form the crux of Plaintiff's claim against Defendant Nurses, no genuine issue of material fact exists once these statements are stricken.

For the foregoing reasons, Plaintiff's objection on this ground will be overruled.

## C. The Magistrate Judge Properly Found that Plaintiff's Claim Failed.

Plaintiff also argues that the Magistrate Judge erred in determining that Plaintiff's claim of deliberate indifference failed against Defendant Nurses because Defendant Nurses were aware of Plaintiff's chest pains and shortness of breath but did not provide medical care. This objection, however, does not specifically address the Magistrate Judge's reasoning but merely reiterates Plaintiff's claim against Defendant Nurses.

The Magistrate Judge found that Plaintiff's claim must fail because Plaintiff did not provide a "valid affidavit or declaration" contradicting Defendant Nurses' statements that they were unaware of Plaintiff's medical condition and not involved in the events upon which Plaintiff's claim hinges. (Dkt. 53, pp. 16-17.) As a result, Plaintiff could not show that Defendant Nurses were deliberately indifferent

18

because Defendant Nurses were not aware of Plaintiff's medical complaints and could not draw the requisite inference that Plaintiff faced a substantial risk of harm. (*Id*.)

Because the Court determined above that the relevant statements regarding Defendant Nurses in Plaintiff's affidavits are not based on personal knowledge and therefore cannot be considered, the Court agrees with and will not disturb the Magistrate Judge's analysis of this issue. Plaintiff's objection on this ground will also be overruled.

## D. Plaintiff had a Meaningful Opportunity to Conduct Discovery.

Plaintiff also claims that he was not given a meaningful opportunity to conduct discovery and therefore could not adequately prepare his response to Defendant Nurses' motion for summary judgment. (Dkt. 55, pp. 4-9.) As part of his objection, Plaintiff lists eight discovery requests relating to his claim against Defendant Nurses, requesting to interview certain individuals and to personally inspect and copy his complete medical records. (*Id*.)

The Court, upon careful review of the docket in this case, finds that Plaintiff has had the opportunity to conduct discovery and that the Magistrate Judge gave adequate consideration to Plaintiff's pro se status. First, Plaintiff requested and was granted an extension to file his response to Defendant Nurses' motion for summary judgment. (Dkts. 30-31.) Plaintiff's response was not filed until February 6, 2015 – approximately four months after the motion was filed. (*See* dkts. 28, 33.)

Second, the Magistrate Judge has timely considered and granted several of
Plaintiff's discovery-related motions. On February 13, 2015, in ruling on Plaintiff's
July 2, 2014 Motion to Compel (Dkt. 13), the Magistrate Judge ordered Defendant
Nurses to provide Plaintiff with the names of the doctors and nurses who treated
him on certain dates at Allegiance Hospital. (Dkt. 34, p. 3.) When the Defendant
Nurses' response was inadequate, the Magistrate Judge issued an order sua sponte
requiring Defendant Nurses to comply with the original Order within seven days.
(Dkt. 36.)

On April 20, 2015, the Magistrate Judge granted Plaintiff's motion for
subpoena. (Dkt. 47.) Plaintiff sought to "to examine [and] inspect his complete
medical records in the possession of the Defendant and the Department of
Corrections." (Dkt. 46, p. 2.) The Magistrate Judge ordered the Clerk of Court to
issue Plaintiff a subpoena, noting that it was Plaintiff's responsibility to complete
the form and ensure its proper service. (Dkt. 47, p. 4.) Plaintiff was also reminded to
follow applicable discovery rules and procedures so as to avoid the need to file
additional discovery motions. (*Id*. at fn. 2.) Plaintiff claims that he mailed the
subpoena on April 6, 2015. (Dkt. 50, ¶ 5.)

Defendant Nurses filed a motion to stay discovery on May 7, 2015, arguing
that discovery should be stayed pending the Court's determination of their motion
for summary judgment. (Dkt. 48.) Plaintiff responded, arguing that Defendants did
not comply with the subpoena to produce 5,718 pages of his medical records. (Dkt.
50, ¶¶ 1, 3-4.) Plaintiff argued that without these medical records, he could not

20

prepare a defense and was being denied access to the courts. (*Id.* at ¶ 6.) Plaintiff did not explain why he needed a complete set of his medical records, or what he was seeking to show from these records.

The Magistrate Judge ruled in favor of Plaintiff and denied Defendant Nurses' motion on May 29, 2015. (Dkt. 51.) Finding that the pending dispositive motion did not hinge on qualified immunity but rather "on the question of 'Whodunnit?'", the Magistrate Judge held that Plaintiff's discovery request was reasonably limited to his medical records and the log book. (*Id.* at 3.) Accordingly, the Magistrate Judge allowed Plaintiff to continue developing the record "on the issue of whether the three nurses in question…were actually involved in the treatment he alleges to have occurred in paragraph 22 of his complaint." (*Id.* at 4.) Plaintiff was cautioned, however, that the Court would not delay ruling on the pending motion to allow Plaintiff to engage in what was possibly a "'fishing expedition' … in a fruitless effort to dispute the indisputable."[13] (*Id.* at 3.)

With respect to Plaintiff's discovery requests inserted into his objection, the Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted

---

[13] The issue of the production of Plaintiff's medical records persists in this case. On July 28, 2015, Defendant Rhodes filed 823 pages of Plaintiff's medical records under seal as an exhibit to her motion for summary judgment. (Dkt. 61.) Plaintiff was served with a paper copy. (*See* dkt. 60, p. 6.) On August 13, 2015, Plaintiff filed yet another motion to compel asking that he be allowed to "inspect, examine, copy [sic] his medical, dental and optometry records" and claiming that he had served subpoenas on Defendants on April 6, 2015 and July 11, 2015 that have been ignored. (Dkt. 73, pp. 1-2.) Defendant nurses responded on August 24, 2015, stating that they do not oppose giving Plaintiff a copy of his medical records but they do oppose paying for such a copy and allowing Plaintiff to personally inspect his records, citing existing MDOC procedure permitting inmates to obtain copies of their medical records. (Dkt. 78.) Plaintiff's motion is still pending as of the date of this Order.

'to go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (internal quotations omitted). Because Defendant Nurses' motion for summary judgment will be granted, these requests are moot. Regardless, Plaintiff's requests to interview multiple non-party MDOC employees and to personally review and inspect his *entire* medical record cast a broad net and, in light of the evidence available to the Court, seem unlikely to uncover any new, material facts.

On balance, the record reflects that Plaintiff was able to conduct discovery and was assisted on various occasions with conducting discovery in this case. Plaintiff has been able to draft and file multiple motions, objections, letters to the Court, and response and reply briefs, and has been able to obtain documentation from opposing parties including records from his Step I and Step II grievance investigations, medical records from Allegiance Hospital, a selection of his medical records from MDOC, and health care request forms. The Magistrate Judge has granted Plaintiff extensions, and several of Plaintiff's discovery motions. Accordingly, Plaintiff's objection on this ground will be overruled.

### E. Plaintiff's Claim against Defendant Haase Will Not Be Held in Abeyance.

Finally, Plaintiff requests that the Court hold his claim against Defendant Haase in abeyance "til such time discovery is obtained." (Dkt. 55 at 17.) The Court, however, declines to require Defendant Haase to continue litigating this case while Plaintiff attempts an indefinite fishing expedition for any evidence that might

implicate her. Plaintiff has had nearly two years since filing his complaint in January 2014 to articulate and substantiate a claim against Defendant Haase. Plaintiff has yet to elaborate on his claim that "these registered nurses unauthorized released Plaintiff's medical information," the only claim in his complaint that could include Defendant Haase. (Dkt. 1, ¶ 22.) Moreover, Defendant Haase is not even referenced in either of Plaintiff's affidavits or in any substantive way in his response brief.

Plaintiff must do more than make vague allegations or conclusory statements regarding the need for discovery. *See Triplett v. Connor*, 109 Fed. App'x. 94 (6th Cir. 2004); *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) ("Nebulous assertions that more discovery time would have produced evidence to defeat summary judgment will be unavailing."). Even if the Court were to consider Plaintiff's affidavits, there is no evidence or allegation in this record of Defendant Haase's involvement with Plaintiff on January 17, 2014. The Court will not require Defendant Haase to wait while Plaintiff attempts to find such evidence. The Magistrate Judge appropriately found that Defendant Haase is entitled to summary judgment.

## III.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Magistrate Judge Anthony P. Patti's June 9, 2015 Report and Recommendation (Dkt. 53) is **MODIFIED** and **ADOPTED.** Plaintiff's objections to the Report and Recommendation (Dkt. 55) are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Carlson, Haase, and O'Connell's motion for summary judgment (Dkt. 28) is **GRANTED**. Accordingly, Defendant Carlson, Haase, and O'Connell's objection (Dkt. 52) to the May 29, 2015 Order denying in part their motion to stay discovery (Dkt. 51) is **OVERRULED AS MOOT.**

Defendant Karen Rhodes is the only remaining Defendant in the above-captioned case.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2015

## Certificate of Service

I hereby certify that this Order was electronically submitted on September 28, 2015, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager

24