UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD TOWNSEND,

        Plaintiff,

v.                                                    Case No. 14-10411
                                                      HON. TERRENCE G. BERG
KAREN RHODES, et al.                                  HON. ANTHONY P. PATTI

        Defendants.

_____/

**OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION (DKT. 107)**

*Pro se* Plaintiff Richard Townsend, proceeding *in forma pauperis*, is a state

prisoner currently incarcerated at the Gus Harrison Correctional Facility in Adrian,

Michigan. (*See* dkt. 102.) On January 27, 2014, he filed this civil rights action under

42 U.S.C. § 1983 against Defendant Karen Rhodes ("Defendant"), a doctor, and

Defendants Vickie Carlson, Linda Haase, and Marsha O'Connell, all nurses

employed by the Michigan Department of Corrections. (*See* dkt. 1.) Plaintiff alleges

that Defendants were deliberately indifferent to his serious medical needs in

violation of the Eighth Amendment to the United States Constitution while he was

incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

(*See id.*) Defendants Carlson, Haase, and O'Connell were dismissed from this

matter on September 28, 2015 after prevailing on their motion for summary

judgment. (Dkt. 85.) Only Defendant Rhodes remains a party to this action.

On July 28, 2015, Defendant Rhodes filed a motion for summary judgment

(Dkt. 59) that included, as an exhibit, nearly 800 pages of Plaintiff's medical records

filed under seal (Dkt. 61). Plaintiff responded on November 23, 2015 (Dkt. 98), and Defendant replied on December 2, 2015 (Dkt. 99). On January 25, 2016, Plaintiff filed, without prior permission, a sur-reply that raised new arguments (Dkt. 101), but Defendant objected (Dkt. 103) and this document was stricken on February 4, 2016 as improvidently filed (Dkt. 105).

Before the Court is a February 4, 2016 Report and Recommendation recommending that the Court grant summary judgment in favor of Defendant by Magistrate Judge Anthony P. Patti.[1] (Dkt. 107) Judge Patti found that there was ample evidence in the record of Defendant's concern for Plaintiff's health, including her prescriptions for different brands of insulin, for medication to treat Plaintiff's rash, for Neurontin and Naproxen to treat Plaintiff's nerve pain, and Defendant's management of Plaintiff's pain medications. (*Id.* at 30-31.) Accordingly, he concluded, the record "does not support a conclusion that [Defendant] was deliberately indifferent to Plaintiff's serious medical needs" and Defendant "should prevail on her motion for summary judgment". (*Id.* at 31.)

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the Report and Recommendation. 28 U.S.C. § 636(b)(1), E.D. Mich. L.R. 72.1(d). A district court must conduct a de novo review of the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

---

[1] On January 30, 2014, the Court referred this matter to Magistrate Judge Paul J. Komives. (Dkt. 5.) This case was then reassigned to Magistrate Judge Anthony P. Patti on January 13, 2015. (Text-only order, January 13, 2015.)

2

magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

Any objections to the February 4, 2016 Report and Recommendation were initially due on February 18, 2016. *See* 28 U.S.C. § 636(b)(1), E.D. Mich. L.R. 72.1(d). On February 19, 2016, Plaintiff filed a request to extend this deadline by 14 days. (Dkt. 109.) His request was granted on February 22, 2016, and a new deadline of March 3, 2016 was established by adding the requested 14 days to the original deadline. (Feb. 22, 2016 text-only order.) Plaintiff was notified that no further extensions would be granted. (*Id*.) On March 8, 2016, Plaintiff's objections were filed on the Court's docket. (Dkt. 111.) These objections were dated March 2, 2016. (*Id*. at 20.) Defendant responded on March 16, 2016. (Dkt. 112.) Any reply from Plaintiff was due on or before March 23, 2016 (*See* L.R. 7.1(e)(2)(C)), but no reply, or a request for an extension of time to file one, has been received by the Court as of the date of this Order.

In his objections, Plaintiff maintains that Judge Patti erred by: (1) not granting Plaintiff sufficient time to respond to Defendant's motion (*Id*. at 12-13); (2) not allowing Plaintiff to respond to Defendant's motion to strike Plaintiff's 158-page sur-reply[2] (*Id*. at 13); (3) failing to consider Plaintiff's claim that Defendant prescribed Plaintiff insulin to which Defendant knew Plaintiff was allergic (*Id*. at 13-15); (4) ignoring medical evidence that Plaintiff is allergic to the Humulin brand of insulin prescribed by Defendant (*Id*. at 15-18); (5) determining that Defendant

---

[2] Plaintiff filed a separate objection to Judge Patti's order striking Plaintiff's sur-reply. (Dkt. 108.) Plaintiff raises the same argument here as an objection to the report and recommendation. (*See* Dkt. 108 and Dkt. 111, p. 13.)

was not deliberately indifferent to Plaintiff's serious medical needs (*Id*. at 18); (6) finding that the decision to prescribe a specific brand of insulin was not solely in Defendant's hands (*Id*. at 18-19); and (7) denying Plaintiff's discovery request for a list of ingredients in Humulin brand insulin and a list of side effects for this insulin published by the American Diabetes Association (*Id*. at 19-21).

The Court has carefully reviewed the Magistrate Judge's report and recommendation, the record, and the parties' arguments. For the reasons set forth below, Plaintiff's objections will be **OVERRULED**. The Report and Recommendation (Dkt. 53) will be **ADOPTED** as the opinion of the Court. Because Defendant Rhodes is the only defendant remaining in this case, this case will be **DISMISSED WITH PREJUDICE** and the Court will certify pursuant to 28 U.S.C. §1915(a)(3) that no appeal of this decision can be taken in good faith.

## I.    FACTUAL BACKGROUND

At issue in Defendant's Motion for Summary Judgment is Plaintiff's claim of deliberate indifference. Plaintiff is a type-two diabetic who requires insulin three times a day. (Dkt 1, ¶ 2.) He alleges in his Complaint that, while under the care of Defendant, he told her that he was having allergic reactions to Humulin brand insulin.  These reactions included difficulty breathing, hives, itchy rashes, skin discoloration, and liquid-filled "small humps". (*Id*. at § 3.) Plaintiff alleges that Defendant was deliberately indifferent because she continued to prescribe Humulin brand insulin despite her awareness of Plaintiff's concerns, forcing Plaintiff to stop taking his medication because he could not tolerate it. (*Id*. at §§ 4-21.)

4

In the report and recommendation, Judge Patti includes a detailed chronology of the medical care Plaintiff received from January 12, 2011 to January 17, 2014. (Dkt. 107, pp. 5-15.) This chronology distills over 800 pages of medical records into a succinct summary. (*See* dkt. 61, dkt. 107, pp. 5-15.) In his objections, Plaintiff does not raise any material factual disputes, but instead challenges the weight given to certain facts and medical opinions and the legal conclusions drawn from them. (*See* dkt. 107.) Having thoroughly reviewed the record, there is no reason to reiterate here the thorough and accurate recounting of the relevant facts provided by Judge Patti. Because the Court has reviewed that chronology and finds it to be accurate, the Magistrate Judge's factual chronology at pages 5 to 15 is adopted in whole for purposes of this Opinion and Order.

## II.    ANALYSIS

The Court is reviewing the Magistrate Judge's Report and Recommendation (Dkt. 107), Plaintiff's objections (Dkt.111), and Defendant's response (Dkt. 112). The Magistrate Judge found that there was no genuine issue of material fact as to whether Defendant was deliberately indifferent to Plaintiff's serious medical needs and therefore recommended granting summary judgment in favor of Defendant. (Dkt. 107, pp. 30-31.)   For the reasons set forth below, the Court agrees with the Magistrate Judge's recommendation, and therefore adopts it.

## A. Legal Standard

### a. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001). "It is well established that statements appearing in a party's brief are not evidence." *Duha v. Agrium, Inc.,* 448 F.3d 867, 879 (6th Cir. 2006).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

The Court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). There is no genuine dispute where one party's version of the facts is blatantly contradicted by objective evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

**b. Deliberate Indifference**

In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth

7

Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Farmer*, 511 U.S. at 834. To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id*. at 837. In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839–40). "Basically, there

8

must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

Regarding claims against a medical provider, in cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the plaintiff fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 Fed. App'x. 410, 411 (6th Cir. 2006) ( "as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. App'x. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued the plaintiff's previous course of treatment and prescribed what the plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. 2010) (the plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), adopted by 2010 WL 1657690 (E.D. Mich. 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich.

9

2009) (the plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals the plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested).

There is no dispute between the parties that Plaintiff's medical needs as a type-two diabetic are serious. Defendant maintains, however, that Plaintiff has failed to satisfy the subjective component of the deliberate indifference test. That is, even if Plaintiff can satisfy the objective prong of the deliberate indifference test, the second element of *Wilson* requires a showing that Defendant acted with deliberate indifference. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105–06 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

10

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. A claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860–61 (6th Cir. 1976). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). The deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298) to deny or to delay purposely "access to medical care", or to intentionally interfere "with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). In this matter, the Magistrate Judge concluded that Plaintiff failed to show that Defendant acted with deliberate indifference to his serious medical needs.  Upon de novo review, this Court agrees.

**B. Plaintiff's Objections Are without Merit**

As noted above, Plaintiff has filed seven objections in response to the Report and Recommendation. (*See* dkt. 111.) Defendant responded, arguing that each of these objections should be overruled. (*See* dkt. 112). Plaintiff did not file a reply.

As this Circuit has clarified, a party challenging a report and recommendation cannot merely raise general objections but must instead cite to specific portions of the report and explain why those portions are objectionable. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (citations omitted). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 Fed. App'x. 354, 356 (6th Cir. 2001). Such specificity is necessary to conserve judicial resources and avoid the effective duplication of the Magistrate Judge's work by the district court. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). With this guidance in mind, the Court will now address each of Plaintiff's objections in turn.

**a. The Magistrate Judge Afforded Plaintiff Sufficient Time to Respond to Defendant's Motion for Summary Judgment**

Plaintiff argues in his first objection that Judge Patti did not allow him sufficient time to respond to Defendant's Motion for Summary Judgment. (Dkt. 111, p. 12.) Altogether, Plaintiff was granted about three and a half months to file his response, a more than adequate period of time. Defendant's motion was filed on July 28, 2015. (Dkt. 59.) Pursuant to Local Rule 7.1(e)(1)(B), the non-moving party has 21 days to respond to dispositive motion such as a motion for summary

12

judgment. Based on the filing date, that deadline in this case was August 18, 2015.
On August 10, 2015, the Magistrate Judge established the deadline for Plaintiff's
response as September 9, 2015 in a scheduling order. (Dkt. 71.)

On August 13, 2015, Plaintiff filed a motion for an extension of time to
respond, requesting an additional 60 days due to his deteriorating health. (Dkt. 75.)
The Magistrate Judge granted Plaintiff's request on August 28, 2015 and
established a new deadline of October 19, 2015 by adding 60 days to the 21-day
deadline set forth in the Local Rules and taking into account two weekend days.
(Dkt. 79, p. 2.) The Magistrate Judge explained that he was establishing this
deadline after taking into account the likelihood that the August 10, 2015
scheduling order had crossed paths with Plaintiff's motion for an extension, which
was hand-dated August 10, 2015. (*Id*.) The Magistrate Judge reasonably assumed,
and Plaintiff never asserted otherwise, that Plaintiff was seeking a 60-day
extension of the 21-day deadline because Plaintiff requested the extension of time
before he would have received the August 10, 2015 scheduling order. (*Id*.)

On October 7, 2015, Plaintiff filed a second motion for an extension of time to
respond, arguing that the Magistrate Judge erred when he established the October
19, 2015 deadline. (Dkt 87, pp. 1, 3.) In that motion, Plaintiff asserted that the
Magistrate Judge should have added 60 days to the September 9, 2015 deadline
established in the August 28, 2015 Order rather than add 60 days to the original

13

21-day deadline established by the Local Rule. (*Id.* at 1.) According to Plaintiff, he should have until December 11, 2015 to respond.[3] (*Id.* at 1, 3.)

On October 14, 2015, the Magistrate Judge granted Plaintiff's motion in part, establishing a deadline of November 16, 2015. (Dkt. 88.) Plaintiff did not request any further extensions. Plaintiff's response, hand-dated November 16, 2015, was filed with the Court on November 23, 2015. (Dkt. 98.)

Plaintiff maintains in his first objection that the Magistrate Judge did not consider his poor health and was "required to permit reasonable time" to respond. (*Id.*) Plaintiff does not state how much more time beyond 3.5 months he believes he needed. (*See id.*) Federal Rule of Civil Procedure 6(b) provides that a court *may*, but is not required, to grant an extension of time "for good cause". Moreover, it is axiomatic that the federal courts have the inherent power to manage their dockets to achieve the orderly and prompt resolution of their cases. *See Link v. Wabash*, 370 U.S. 626, 630-31 (1962); *see also In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) ("We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.")

Plaintiff suffered no actual and substantial prejudice here. In the first instance, the Magistrate Judge granted both of Plaintiff's motions for an extension

---

[3] It is unclear how Plaintiff arrived at this date. Adding 60 days to the September 9, 2015 deadline, as Plaintiff argues should have been done, gives a deadline of November 9, 2015. Adding 60 days to the October 19, 2015 deadline established by Judge Patti when he granted Plaintiff's first request for an extension gives a deadline of December 18, 2015. Plaintiff's ultimate deadline to respond was November 16, 2015, or 65 days after September 9, 2015. (Dkt. 88.) Accordingly, Judge Patti afforded Plaintiff *more* than 60 days from September 9, 2015 to respond. Plaintiff is therefore arguing for an extension that was in fact granted and then some.

of time and afforded Plaintiff over three months to respond. (*See* dkts. 79, 88.) During those three months, despite his claims if poor health, Plaintiff was able to continue vigorously litigating his case – he drafted and filed a motion for a preliminary injunction (Dkt. 63), a supplemental complaint (Dkt. 65), three response and reply briefs (Dkts. 70, 77, 81), affidavits (Dkts. 64, 72,), a motion to compel discovery (Dkt. 73), a motion to appoint counsel (Dkt. 74), a motion for judgment (Dkt. 89), a motion for discovery (Dkt. 90), a motion for interrogatories (Dkt. 91), three motions for extensions of time (Dkts 75, 86, 87), and a letter to the Magistrate Judge (Dkt. 82).

Plaintiff's health situation has been considered repeatedly by both the Magistrate Judge and this Court in granting him numerous extensions of time throughout this litigation. (*See* dkts. 31, 79, 88, Oct. 5, 2015 text-only order, Feb. 22, 2016 text-only order.) Plaintiff was most recently granted an extension of time to file his objections to this February 4, 2016 Report and Recommendation. (Feb. 22, 2016 text-only order.) Eventually, however, motions must be decided and cases must be resolved. Because this Court finds that Plaintiff was afforded more than sufficient time to respond to Defendant's motion, his first objection will be overruled.

### b. The Magistrate Judge Was Not Required to Allow Plaintiff to Respond to Defendant's Motion to Strike

Second, Plaintiff argues that the Magistrate Judge erred by striking Plaintiff's second response or sur-reply to Defendant's motion without allowing Plaintiff to respond to Defendant's motion to strike that sur-reply. (Dkt. 111, p. 13.)

Plaintiff raised the same argument in his February 19, 2016 objection to the Magistrate Judge's order to strike. (Dkt. 108.) Plaintiff sites no legal authority in support of his argument. (*See* dkt. 111, p. 13.)

On January 25, 2016, Plaintiff filed a 158-page document he captioned as his "Brief in Opposition to Defendant Karen Rhodes' Motion for Summary Judgment". (Dkt. 101.) Plaintiff, who was on notice that the November 16, 2015 deadline to respond would not be extended, did not seek leave to file this amended response or sur-reply and did not explain why it was being filed over two months after the deadline to respond had expired and over a month after Defendant's motion had been fully briefed.

On January 28, 2016, Defendant filed a motion to strike Plaintiff's sur-reply. (Dkt. 103.) Defendant argued that this sur-reply was filed late and thus prejudiced Defendant because "it includes entirely new arguments, a new apparent claim for retaliation, a new affidavit from Plaintiff, and new evidence to which Defendant never received the opportunity to respond." (*Id.* at § 8.) The Magistrate Judge agreed, granted Defendant's motion, and struck Plaintiff's sur-reply from the record on February 2, 2016. (Dkt. 104.)

The Magistrate Judge gave several reasons for striking the document. (*Id.* at 2-3.) First, Local Rule 7.1(d)(1) does not allow for the filing of a sur-reply. In addition, the Magistrate Judge's scheduling orders setting response deadlines did not contemplate a sur-reply. (*See* dkts. 71, 79, 88.) Moreover, Plaintiff did not seek leave to file his sur-reply, the Court already had an adequate record, the briefing

had already been long delayed, the motion had been fully briefed for over a month, and the Magistrate Judge's publicly-available guidelines provided that any additional briefing would not be allowed without leave of court and would be stricken if filed without permission. (Dkt. 104, pp. 2-3.) Finally, after examining the merits of the issues raised, the Magistrate Judge found that the content of the sur-reply was not relevant or material. (*Id.* at 3.)

Plaintiff did not have a constitutional right to file a response to Defendant's motion to strike and moreover he was not authorized to file the document in question in the first place. As noted above, matters of docket control "are committed to the sound discretion of the" court. *In re Air Crash Disaster*, 86 F.3d at 516. Local Rule 7.1(e)(1) does not contemplate filing a sur-reply and Local Rule 7.1(g)(1) requires parties to request *ex parte* or stipulate to additional time to file supporting documents and briefs. In addition, the Magistrate Judge's publicly-available practice guidelines specify that additional briefing such as sur-replies will be stricken unless they are filed with prior permission. (Dkt. 104, p. 2.)

Plaintiff did not seek prior permission to file his additional briefing or sur-reply, and does not explain why this second brief was filed so late. The Magistrate Judge was therefore acting within his discretion to strike the document in question and did not have to allow Plaintiff to respond before doing so. Accordingly, Plaintiff's second objection to the report and recommendation, as well as his identical objection (Dkt. 108) to the Magistrate Judge's order to strike (Dkt. 104), will be overruled.

### c. The Magistrate Judge Considered Plaintiff's Allegations That Defendant Was Aware of but Disregarded Plaintiff's Allergy to Humulin Brand Insulin

Third, Plaintiff argues that the Magistrate Judge erred by ignoring evidence that Defendant knew Plaintiff was allergic to Humulin brand insulin but prescribed it for him regardless. (Dkt. 111, pp. 13-15.) According to Plaintiff, he has proven both the objective and subjective components of a deliberate indifference claim because he has shown that: (1) he has a serious medical need; and (2) "Defendant Rhodes knew Plaintiff was allergy [sic] to the Humulin Insulin when she prescribed it." (*Id.* at 15.)

In the Report and Recommendation, however, it is clear that the Magistrate Judge did consider Plaintiff's allegation that he is allergic to Humulin brand insulin and also carefully reviewed the medical care Plaintiff received for his diabetes, skin rash, and pain. (*See* dkt. 107, pp. 17-30.) The Magistrate Judge found that it was "indisputable that Defendant Rhodes was not indifferent to Plaintiff's medical needs" given Defendant's prescriptions for insulin, prescriptions for a topical cream to treat Plaintiff's rash, prescriptions for different pain medications, and Defendant's management of Plaintiff's pain medications. (*Id.* at 30-31.)

Defendant was aware of Plaintiff's belief that he is allergic to Humulin brand insulin, but this does not establish that Defendant accepted and agreed that Plaintiff's belief was true. First, there is no medical evidence in the record establishing that Plaintiff is in fact allergic to Humulin brand insulin. Second, Defendant affirmatively states on numerous occasions that Plaintiff is not allergic

18

to his insulin. For example, on January 30, 2014, Defendant asserts in her administrative note completed as part of a chart review, in all capital letters, that Plaintiff is "NOT ALLERGIC TO HUMULIN INSULIN, HE HAS AN EXCEMATOID RASH". (Dkt. 61-5, p. 8.)

Plaintiff may have reported symptoms of what he believes was an allergic reaction to Humulin brand insulin, but Defendant never indicates in any of the medical records that she agrees with him and there is no medical evidence substantiating Plaintiff's belief. To the contrary, Defendant observes that Plaintiff has convinced himself that "he has an allergic reaction to [the insulin] causing a rash even though rash didn't clear since he stopped taking insulin." (Dkt. 61, Ex. B, p. 22.) In other words, Defendant believes that Plaintiff has convinced himself that he is allergic to a particular brand of insulin even though the medical evidence is to the contrary. Plaintiff's personal belief is not evidence of what Defendant knows to be true based on her medical training, experience, and treatment of Plaintiff. Because Defendant's intent is not based solely on Plaintiff's subjective complaints, but on her medical judgment, the mere fact that Defendant was aware of Plaintiff's belief that he is allergic to a particular brand of insulin is not sufficient to establish that Defendant was deliberately indifferent.

Plaintiff has not satisfied the subjective component of a deliberate indifference claim because he has not shown that Defendant had a sufficiently culpable state of mind in denying Plaintiff medical care. *See Farmer v. Brennan* 511 U.S. 825, 834 (1994); *see also Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013).

All the record shows is that Defendant knew that Plaintiff thought he was allergic to his insulin, not that Plaintiff was in fact allergic to it or that Defendant knew or believed that he was. Plaintiff's assertion that Defendant knew or believed he was allergic to Humulin brand insulin and disregarded that knowledge is based on mere speculation and represents a mischaracterization of the record (Dkt. 112, p. 5). To argue that the Magistrate Judge failed to consider whether Defendant had subjective knowledge of Plaintiff's allergy also mischaracterizes the Report and Recommendation. Plaintiff's third objection will be overruled.

### d. The Magistrate Judge Correctly Determined That a Disagreement between Medical Providers Does Not Create a Genuine Issue of Material Fact

Fourth, Plaintiff argues that there is medical evidence proving that he is allergic to Humulin brand insulin but the Magistrate Judge ignored it. (Dkt. 111, p. 15.) According to Plaintiff, this evidence includes Defendant's failure to test whether Plaintiff is allergic to Humulin brand insulin, statements by Physician's Assistant Robert Salmon that Plaintiff had an allergic reaction to Humulin and lesions on his back, statements by Doctors Shawn Latrate and Michael Adix that Plaintiff should not be given Humulin brand insulin, and Plaintiff's assertion that his rash healed when he stopped taking Humulin brand insulin. (*Id.* at pp. 15-16.)

The Magistrate Judge did not ignore any of this evidence; all of this evidence, and more, is considered in the Report and Recommendation. (*See* dkt. 107, pp. 26-28.) With respect to Plaintiff's allegation that Defendant did not test him for a Humulin allergy and that his rash cleared when he stopped taking Humulin brand

insulin, the Magistrate Judge concluded that this was just a reflection of Plaintiff's ongoing disagreement with Defendant, a medical professional, over the course of treatment for Plaintiff's diabetes and rash. (*Id.* at 25-26.)

Plaintiff's claims of a rash, pain, and skin discoloration were addressed by Defendant in December 2011, who diagnosed dermatitis and eczema and prescribed a cream. (Dkt. 61, p. 126.) After Plaintiff complained again of a rash in March 2012, Defendant advised Plaintiff to refrain from using soap on his rash and ordered bloodwork. (Dkt. 61-1, pp. 44, 46, 49.) Plaintiff continued to complain about a rash, and was prescribed Naproxen and advised that the rash "looks like minor acne" requiring only "good hygiene". (*Id.* at 57, 70, 94, 122.)

The rash persisted even after Plaintiff had refused most of his prescribed medications, including his insulin. (Dkt. 61-2, pp. 16, 23-25.) Defendant, on February 8, 2013, again told Plaintiff that the rash is eczema and that his lab results "show no lupus or other things causing rash" before ordering additional labwork as well as medication for itching and blood pressure. (Id. at 29-32.) Plaintiff did request on May 18, 2013 and May 23, 2013 to be tested for an allergic response to Humalog insulin, NPH insulin, and Humulin 70-30 insulin but was told by Registered Nurse Cindy L. Murphy and Renyu Xue, not Defendant, that "Health care does not provide such a test." (Dkt. 61-2, pp. 104, 106.) Throughout this period, Plaintiff was prescribed several different kinds of Humulin brand insulin including N, R, NPH, and 70-30, and Novolin brand insulin. (*See* dkt. 107, pp. 5-11.)

In October 2013, Defendant requested a renewal of the Novolin brand insulin prescription, which Plaintiff seemed willing to take, noting that because Plaintiff "has been finding reasons to refuse his insulin for years", getting him to take his insulin, regardless of the brand, was an improvement. (Dkt. 61-3, pp. 53-57.) Defendant's request, however, was denied because patient compliance "is not an indication for off-formulary of DAW medications". (*Id.*)

Plaintiff renewed his complaints about an itchy rash after he learned that his insulin had been changed, but was told that "it is unlikely that the medication was causing his rash" in part because the rash persisted even when he was not taking his insulin. (*Id.* at 114-15.) Plaintiff's rash eventually began to clear after treatment with an antifungal cream. (Dkt. 61-4, p. 155.) On January 30, 2014, Defendant again sought to renew the prescription for Novolin brand insulin and was successful – Novolin brand insulin was prescribed for Plaintiff through January 30, 2015. (Dkt. 61-5, pp. 9-10.)

Plaintiff does not agree with the course of treatment prescribed for his rash and diabetes, arguing that he should have always been prescribed Novolin brand insulin because he is not allergic to it, but as the Magistrate Judge observed, mere disagreements do not amount to deliberate indifference. *E.g.*, *Owens v. Hutchinson*, 79 Fed. App'x. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). This Court will not second-guess the judgment of a

medical professional such as Defendant, who has consistently responded to Plaintiff's complaints, attempted to treat his symptoms, and repeatedly requested a brand or type of insulin that Plaintiff will not refuse.

A disagreement among medical providers as to a course of treatment is also insufficient to create a genuine issue of material fact with respect to whether Defendant was deliberately indifferent. Plaintiff identifies Adix, Salmon, and Letrate, medical providers who saw Plaintiff briefly for uncontrolled diabetes, as indicating that Plaintiff was having an allergic reaction to his insulin. (Dkt. 111, pp. 15-16.) The Magistrate Judge reviewed these opinions, in addition to others, and found that this disagreement among medical professionals is not sufficient to give rise to a § 1983 claim of deliberate indifference because an illness can be successfully treated in many ways. (Dkt. 107, p. 27.) Moreover, Adix, Salmon, and Letarte are professionals working in hospital emergency rooms who rely primarily on the medical history the patient himself provides, and none of these providers performed any testing. (*See* Dkt. 59-2, ¶¶76, 91.)

The Court finds that the conclusions of the Magistrate Judge are well founded. Adix, Salmon, and Letarte may have disagreed with Defendant's assertion that Plaintiff was not allergic to his insulin, but "a § 1983 claim based on the Eighth Amendment is not present when a doctor disagrees with the professional judgment of another doctor, as there are several ways to treat illness." *Acord v. Brown*, No. 93-2083, 1994 WL 679365, *2 (6th Cir. Dec. 5, 1994); *see also Mitchell v. Hininger*, 553 F. App'x 602, 606 (6th Cir. 2014) ("Choosing one doctor-supported treatment

regimen over another doctor-supported treatment regimen does not amount to deliberate indifference."). Without more than a disagreement as to treatment between patient and doctor or between medical professionals, there is no genuine issue of material fact as to whether Defendant was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff's fourth objection will be overruled.

### e. The Magistrate Judge Correctly Determined That Defendant Was Not Deliberately Indifferent to Plaintiff's Diabetes, Rash, or Pain

In his fifth objection, Plaintiff reasserts his argument that Defendant knew Plaintiff was allergic to Humulin brand insulin but prescribed it for him anyway with the "intent to punish" him. (Dkt. 111, p. 18.) Plaintiff argues that the record clearly establishes that Defendant "was aware of Plaintiff's allergic reaction to the Humulin insulin" because Defendant herself stated that "we were able to get inmate to take Novolin instead of Humulin because *he was convinced he was allergic to the Humulin* and has no problem with the Novolin." (*Id.*) (emphasis added). Citing this quotation, Plaintiff argues that the Magistrate Judge erred when he determined that Plaintiff failed to show that Defendant was deliberately indifferent. (*Id.*)

As discussed above, the record does not establish that Plaintiff is allergic to Humulin insulin with any degree of medical certainty. Instead, the record establishes that Plaintiff thinks he is allergic to this brand of insulin, and that some medical providers believed his assertion. (*E.g.*, Dkt. 61-3, pp. 135-37; Dkt. 61-4, pp. 134, 138.) Defendant, however, clearly does not agree. (Dkt. 91-5, p. 8.)

24

While Defendant was certainly aware of Plaintiff's personal belief, as she examined him and prescribed different treatments for his symptoms on several occasions, there is no evidence that Defendant agreed with Plaintiff but nonetheless prescribed Humulin brand insulin as a punishment. Defendant's statement quoted above shows only that Defendant thought Plaintiff had convinced himself he was allergic to Humulin brand insulin, not that he was *in fact* allergic to that insulin or that Defendant believed that he was.

Finally, many providers in addition to Defendant have noted that Plaintiff's rash persisted even after he stopped taking his insulin, refuting Plaintiff's belief that the Humulin brand insulin was causing an allergic reaction. For example, Physician's Assistant David Launder, who treated Plaintiff on January 30, 2014 for abdominal pain and hyperglycemia, explained to Plaintiff that "it is unlikely that the medication was causing his rash, as he still has it and hasn't used the medications now in over a week." (Dkt. 61-3, p. 114.)

Plaintiff's fifth objection amounts to mere speculation. The Magistrate Judge considered whether Plaintiff was allergic to Humulin brand insulin and whether Defendant responded appropriately to Plaintiff's assertions and physical symptoms. (Dkt. 107, pp. 22-28.) Ultimately, the Magistrate Judge correctly determined that no genuine issue of material fact existed as to whether Defendant was deliberately indifferent to Plaintiff's diabetes, rash, and pain. (*Id.* at 30-31.) Accordingly, Plaintiff's fifth objection will be overruled.

**f. The Magistrate Judge Correctly Determined That the Decision to Prescribe Novolin Brand Insulin Was Not Defendant's Alone**

Plaintiff holds Defendant alone responsible for the decision to switch his insulin from Novolin back to Humulin in October 2013. (Dkt. 61-3, pp. 53-57.)  In his sixth objection, Plaintiff argues that the Magistrate Judge erroneously determined that the decision to prescribe Novolin brand insulin was not Defendant's alone. (Dkt. 111, p. 18-19.) Defendant "had a duty to make a recommendation for the [Novolin] insulin to be renewed prior to the expiration date" but because she failed to do so, Plaintiff "was prescribed Humulin insulin." (*Id.* at 19.) Plaintiff again asserts that Defendant could have prescribed him Novolin, but intentionally prescribed Humulin instead despite being aware of Plaintiff's allergy. (*Id.*) Plaintiff maintains that if Defendant had requested a renewal of the Novolin prescription before the prescription expired, there "is a reasonable chance" that the request would have been granted. (*Id.*)

The record shows that Defendant, after reviewing Plaintiff's case with Regional Medical Director Bergman, requested non-formulary insulin for Plaintiff on May 17, 2013 with Bergman's approval because of Plaintiff's longstanding poor control of his diabetes. (Dkt. 61-2, pp. 96-98.) That same day, Defendant's request was reviewed by Doctor Haresh Pandya, who approved six months of Novolin brand insulin because of Plaintiff's refusal to take Humulin brand insulin. (*Id.* at 99.) On May 25, June 6, June 7 and July 10, 2013, Defendant ordered Novolin for Plaintiff. (*Id.* at 107, 113, 117, 144.)

The Novolin prescription approved for six months on May 17, 2013 would expire on or about November 17, 2013. On October 25, 2013, Defendant sought to renew Plaintiff's Novolin prescription for one year, stating that "[t]hough the control is not good he is at least taking the insulin regularly, which he refused to do previously. He has been finding reasons to refuse his insulin for years, so getting him to take this regularly is a big improvement." (Dkt. 61-3, p. 53.) Defendant's request was deferred by Doctor William Borgerding on October 29, 2013, who stated that patient compliance is not an indication for off-formulary medications but advised Defendant to monitor Plaintiff for any allergic reaction. (*Id.* at 57.)

On October 28, 2013, Defendant changed Plaintiff's insulin prescription from Novolin to Humulin. (*Id.* at 55-56.) Plaintiff asserts that he was informed of this change on or about November 30, 2013. (Dkt 1, ¶ 12.) After learning that his insulin had been changed, Plaintiff reported to Defendant on December 12, 2013 that "they are giving him the wrong insulin (70/30) again and . . . he now has a rash on his back again for about the last month." (Dkt. 61-3, p. 90.) Defendant assured Plaintiff that he was receiving the right insulin. (*Id.* at 91.) On January 30, 2014, Defendant renewed her request for Novolin insulin for Plaintiff with Bergman's approval, citing Plaintiff's poor control of his diabetes. (Dkt. 61-5, p. 9.) Defendant's request was approved and Plaintiff was prescribed Novolin for one year. (*Id.* at 10.)

On these facts, Defendant did attempt to renew Plaintiff's initial six-month prescription for Novolin before that prescription was set to expire in November 2013. (*See* dkt. 61-3, p. 53.) There is no indication in the record that Defendant had

the option, without approval, to prescribe Plaintiff some other brand of insulin or that she intentionally switched Plaintiff's insulin back to Humulin so that Plaintiff would continue to suffer an allergic reaction. Indeed, Defendant attempted twice to renew the prescription to Novolin out of concern for Plaintiff's health, and eventually succeeded. (Dkt. 61-3, p. 53, 61-5, pp. 9-10.) The record reveals Defendant's continued consultation with her colleagues regarding Plaintiff's case, and the need for approval of an off-formulary insulin such as Novolin. The Magistrate Judge's determination that the decision to prescribe Novolin was not solely in Defendant's hands was correct. Plaintiff's sixth objection will be overruled.

### g. Defendant Did Not Fail to Produce Discovery

Finally, Plaintiff argues in his seventh objection that he requested "the names of all the ingredients used to make the Humulin Insulin" and "[t]he side effect the American Diabetes Association has listed for this insulin" but that Defendant has not produced this information and Plaintiff has therefore been denied discovery. (Dkt. 111, p. 19.) Plaintiff asserts that the Magistrate Judge should not have ruled on Defendant's Motion for Summary Judgment until "Plaintiff had a [sic] opportunity to obtain discovery." (*Id*.)

The record shows that Plaintiff requested, as part of a July 3, 2014 Motion to Compel Discovery, "any and all warning, side effects of using Humulin Insulin." (Dkt. 14, ¶ 4.) On October 21, 2015, Plaintiff filed another motion for discovery requesting, among other things, the Defendant produce "report/information from the Diabetes Association pertaining to the preservatives/ingredients which is used

28

to make Humulin N, Humulin R, Humulin NPH, Humulin 70/30, Novolin N and Novolin R." (Dkt. 90, ¶ 2.)

Both motions were denied without prejudice by the Magistrate Judge in part because Plaintiff did not follow proper procedure and seek the requested discovery materials from Defendant directly. (Dkt. 34, pp. 5-6; Dkt. 94, pp. 1-3.) Instead, Plaintiff filed his discovery motions with the Court, asking the Court to order Defendant to produce the materials in question. The Magistrate Judge twice informed Plaintiff that this was not appropriate procedure for obtaining discovery and referred Plaintiff to Federal Rules of Civil Procedure 33 and 34. (*See id.*)

There is no indication in the record that Plaintiff heeded the Magistrate Judge's advice and served his discovery requests on Defendant. Likewise, there is no evidence that Defendant ever received a discovery request from Plaintiff asking for the ingredients in Humulin insulin or for a list of side effects published by the American Diabetes Association. Moreover, neither the Magistrate Judge nor the undersigned ever ordered Defendant to produce these materials. Defendant is thus not at fault for failing to produce these materials.

Finally, Plaintiff does not explain, and it is not obvious to this Court, what material difference this information would have made had Plaintiff been able to obtain it. A lawsuit is indeed a search for the truth, as Plaintiff asserts, but there are procedures that must be followed. Plaintiff was twice made aware of the applicable procedures for requesting and obtaining discovery from Defendant, but

appears not to have adhered to them. Accordingly, Plaintiff's seventh objection will be overruled.

Considering all of Plaintiff's objections, and after reviewing the report and recommendation, it is clear that Plaintiff fails to raise any genuine issue of material fact as to whether Defendant was deliberately indifferent to his serious medical needs. At bottom, this case represents a difference of opinion between patient and doctor regarding the diagnosis and treatment of a medical condition. Plaintiff believes, without medical evidence and contrary to the advice of a series of medical professionals, that he is allergic to a certain brand of insulin.  He therefore wants to be given a different brand. Defendant, a medical doctor, disagrees, although she has twice successfully authorized a prescription for Plaintiff's preferred brand to facilitate his cooperation in taking this potentially life-saving treatment. As discussed above, a mere disagreement with a diagnosis and course of treatment, even between doctors, does not rise to the level of deliberate indifference. *See Owens*, 79 Fed. App'x. at 161; *see also Acord*, No. 93-2083, 1994 WL 679365, *2; *Mitchell,* 553 F. App'x at 606. The Magistrate Judge appropriately granted summary judgment in favor of Defendant.

### III.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Magistrate Judge Anthony P. Patti's February 4, 2015 Report and Recommendation (Dkt. 107) is **ADOPTED.** Plaintiff's objections to the Report and Recommendation (Dkt. 111) are **OVERRULED**. Plaintiff's objection to Judge Patti's order striking Plaintiff's

January 25, 2016 sur-reply is also **OVERRULED**.

      **IT IS FURTHER ORDERED** that Defendant Karen Rhodes' Motion for Summary Judgment (Dkt. 59) is **GRANTED**. As Defendant Karen Rhodes was the only remaining Defendant in the above-captioned case, this case is **HEREBY DISMISSED WITH PREJUDICE**.

      Finally, for the same reasons that the Court dismisses this case, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court therefore certifies that any appeal from this decision could not be taken in good faith and **DENIES** Plaintiff leave to appeal this decision *in forma pauperis. See* 28 U.S.C. § 1915(a)(3).

      **SO ORDERED.**

                                      s/Terrence G. Berg
                                      TERRENCE G. BERG
                                      UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2016

## Certificate of Service

     I hereby certify that this Order was electronically submitted on March 29, 2016, using the CM/ECF system, which will send notification to each party.

                                        s/A. Chubb
                                      Case Manager